Charles H. Washington, sometimes called George Washington, was prosecuted by information filed in the county court of Texas county on the 4th day of December, 1919, for willfully and unlawfully failing to furnish necessary food, clothing, shelter, and medical attendance for certain of his minor children. The cause was tried to a jury in March 1920, resulting in a verdict of guilty with punishment assessed at a fine of $500 and 6 months' imprisonment in the county jail. Defendant took the proper steps, and thereafter perfected an appeal, and the cause is now before this court on numerous assignments of error.
We deem it unnecessary to consider seriatim these various assignments, as the Attorney General has filed a confession of error, which is as follows:
"Plaintiff in error was charged by information with the crime of failing to furnish necessary food, clothing, shelter, and medical attention to his minor children, and was convicted by the jury in the county court of Texas county, Okla., of said offense, and his punishment fixed at 6 months in the county jail and a fine of $500.
"We have carefully read the record in this case, and it seems to us that the main question at the trial was whether *Page 71 
or not plaintiff in error guilty of cruelty to his children and of cruelty to his wife. This question, together with the great mass of testimony regarding other matters, was introduced without any objections. The court in instruction 4 told the jury that there had been a great deal of evidence introduced that was not objected to and which was immaterial to the issues involved, but did not point out what that evidence was, except that he instructed the jury that the testimony relative to the treatment by plaintiff in error of his wife was immaterial and should not be considered by them. Inasmuch as testimony had been introduced showing the treatment of his minor children as to punishing them and whipping them, the jury would be justified in concluding that they could properly consider the testimony bearing upon that fact, and especially in view of the further provision in instruction No. 4, wherein the court told the jury that they could not consider plaintiff in error's treatment of his wife `except for the purpose of assisting you in arriving at a conclusion as to the defendant's general conduct toward the minor children in the home.' The only thing charged against plaintiff in error was that he failed to furnish necessary food, clothing, shelter, and medical attention. He was not charged with the mistreatment of his children in the way of whipping them or in the way of making assaults upon them, and yet the court permitted a great mass of testimony to go to the jury, and while it was not objected to, yet in view of the instructions of the court, we are unable to say that plaintiff in error had a fair trial.
"In instruction No. 6 the court told the jury that, in arriving at their verdict, they had the right to take into consideration the circumstances surrounding plaintiff in error's financial and social ability to furnish necessary clothing, food, shelter, and medical attention, and if the jury believed that he furnished food, clothing, shelter, and medical attention consummate with his financial and social standing that they should find for the plaintiff in error and acquit him. This instruction, without a doubt, placed upon plaintiff in error the burden of proving these things. It is true neither this instruction, nor instruction 4, nor any instruction in fact, was objected to, but impress us as being fundamentally wrong. In *Page 72 
other words, from an entire inspection of the record, we believe that plaintiff in error did not have a fair and impartial trial. We do not think there is any merit in any of the propositions presented by counsel for plaintiff in error unless possibly the failure of the court on the motion of counsel for plaintiff in error to withdraw from the consideration of the jury the voluntary statement of Mrs. Williams, the prosecuting witness, relative to certain acts of plaintiff in error concerning her several years prior to the time of the prosecution.
"For the reasons as stated, we recommend that the judgment of the trial court be reversed."
This prosecution is based on section 2434, Revised Laws 1910, which is as follows:
"Any parent of any child who willfully omits, without lawful excuse, to perform any duty imposed upon him by law to furnish necessary food, clothing, shelter or medical attendance for such child is guilty of a misdemeanor."
In construing an identical statute, in the case of People v. Pierson, 176 N.Y. 201, 68 N.E. 243, 63 L.R.A. 187, 98 Am. St. Rep. 666, the court used this language:
"It would seem that the legislative intent in adopting this provision of the Code is reasonably clear, although possibly more precise language could have been employed. It contemplates that there are persons upon whom the law casts a duty of caring for minors, but it does not specify the persons. They are, however, those upon whom the duty is `by law imposed.' They are designated in the statutes and in the common law as the parents, guardians, or those who by adoption or otherwise have assumed the relation in loco parentis. The duty of such person is specified by the provisions of the section. It is `to furnish food, clothing, shelter, or medical attendance.' Giving the statute a reasonable construction by applying the rule of necessity, it is apparent that it means the necessary food, clothing, shelter, or medical attendance required for the preservation of the health and life of the child." *Page 73 
While, as stated in the confession of error filed by the Attorney General, few objections were made to the introduction of irrelevant and incompetent evidence, and practically no exceptions taken to the court's instructions, we think it apparent that this defendant did not have that fair and impartial trial provided by the Constitution and laws of this state.
A perusal of the transcript of the evidence discloses that the defendant was tried, not so much for failure to provide necessary food, clothing, shelter, and medical attendance for his children, as he was for cruelty to his wife and children, and for abusive language to them covering a period of years not limited by any statute.
About the only evidence that defendant failed to furnish necessary food to his children is to the effect (and this testimony is from the lips of two of his daughters who admit they were "mad" at their father) that defendant had biscuits and eggs to eat while they were only furnished corn bread, maize bread, and feterita bread at such times. Both defendant and his wife deny the truth of such testimony, and state that all the family ate at the same table and had the same food; and it must be remembered that during the period of time covered by this testimony this government was in the midst of a great war, during which food restrictions were placed upon its citizens, especially in the consumption of wheat flour.
As to the failure to furnish necessary clothing, the testimony of the prosecuting witnesses is to the effect (and this testimony is from the lips of defendant's children) that they did not have as nice clothing as other children of less wealthy parents in that immediate neighborhood; that their underclothing was made of flour sacks; but the evidence is undisputed that these children attended church and Sunday school regularly, and witnesses in those gatherings saw nothing unusual *Page 74 
or lacking in their dress. It is somewhat inconsistent, to say the least, to testify that a parent denied his children wheat flour and yet had enough flour sacks to furnish underclothing for eight children throughout the year. We cannot reconcile the statements of these witnesses that they were denied wheat flour with their further statement that they were compelled to wear flour sacks for underwear; and it might be added that if the father ate all the wheat flour and yet had enough flour sacks to furnish underclothing for eight children, he was a powerfully big biscuit eater, and the writer has seen some big biscuit eaters in his time. Both parents deny that the children had no other underwear than that made from flour sacks.
There is no substantial evidence that defendant at any time ever failed to furnish necessary medical attendance for his children, neither is there any substantial evidence that these children were denied proper shelter. At times some of them slept in a dugout, but we are convinced from the record of the evidence in this case that they did so from choice and not from compulsion.
The court permitted one daughter of defendant to go so far as to testify that defendant at one time attempted to commit a criminal assault upon her. Her testimony in this respect is as follows:
"Q. Is there anything you think of, Mrs. Williams, that hasn't been brought out by questions that I have asked you? A. There is one thing I would like to say; he not very long ago at one time tried to ruin me and I know it. Mother was away from home, and he would pull at me and pick at me, and he was fixing to go to bed one Saturday night, and I had taken my bath, and I was fixing to go to bed and he caught me by the arm and told me I would have to come and sleep with him and warm him up, and what did he mean if he didn't intend to ruin me? *Page 75 
"By Mr. Gilson: We object to that and ask that it be stricken from the jury.
"By the Court: Overruled.
"By Mr. Gilson: Exception."
It will be noted that objection was made to this evidence and motion to strike it from the consideration of the jury, that such motion was overruled, and proper exception saved. The admission of this evidence alone is a sufficient reason for reversing this judgment. The defendant was not on trial for any such offense, and the only purpose for which such evidence could have been introduced in a prosecution of this kind was to excite the prejudice and passion of the jury against defendant.
We deem it unnecessary to go into any further discussion of the merits of this appeal. The prosecution was the outgrowth of family differences, and was occasioned by the pronounced animosity of one married daughter of defendant, who, at the time of the prosecution, was living separate and apart from him, and was not on speaking terms with him, and who, on cross-examination, admitted that she was "mad" at him.
It is not our purpose to condone the action and conduct of defendant toward his wife and children. If the testimony of some of his children is true, he was very cruel both to his wife and to them, but that was not the issue in this case. Those were not the offenses for which defendant was being tried. If the officers had been in possession of evidence sufficient to convict of such offenses defendant should have been prosecuted therefor, and evidence of such offenses should not have been injected into a prosecution for willfully omitting to furnish necessary food and clothing for his children.
This trial is full of glaring error occasioned by the admission of incompetent and irrelevant testimony, but we must *Page 76 
admit that few objections were made thereto and few exceptions taken. But objection was made to some of this testimony, and the objection overruled by the court, to which exception was taken, sufficient to require the reversal of the judgment. The instructions, instead of curing any of the numerous errors in the admission of evidence, only tended to aggravate them. The evidence in this case tends to establish that defendant's children did not like the food furnished at his table, not that such food was insufficient for the preservation of the health and life of such children; that they were displeased with the clothing furnished, not that the wearing of such clothing led to the contraction of any sickness by them or was insufficient considering the weather conditions. While there is a tendency these days, on the part of girls of the age of defendant's daughters, to wear peekaboo waists and clock-stitch silk hose, this court has not yet arrived at that esthetic state to hold that such apparel is necessary to the preservation of the health and life of minor females, much less to the protection of their morals. It is evident to us that defendant was not fairly tried, and that the verdict is the result of prejudice and passion occasioned by the admission of incompetent and irrelevant evidence.
The judgment is reversed.
DOYLE, P.J., and BESSEY, J., concur.